**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

STATE OF NEW YORK,

*Plaintiff*,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; and ERIC SCOTT TURNER, in his official capacity as Secretary of the Department of Housing and Urban Development,

*Defendants.*

No. 26-cv-8639

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. For almost sixty years, the United States Department of Housing and Urban Development (HUD) has, by congressional mandate, funded programs throughout the United States that provide counseling to homeowners, homebuyers, and renters with the information they need to be successful in the housing marketplace through its Housing Counseling program (HC program).

2. New York, through the New York State Housing Finance Agency (HFA), has received HC funding as the HUD-approved state housing finance agency for approximately 13 years that it has in turn passed through to numerous New York not-for-profits. But this year, New York will not receive the approximately $1 million it applied for, because HUD has made the final decision to not make awards under the HC program and, without congressional approval, shut down the HC program. Those decisions violate the Administrative Procedure Act (APA) and should be vacated, and HUD should be directed to issue awards under the HC program notice of funding opportunity (NOFO) for fiscal year 2026.

## JURISDICTION AND VENUE

3. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. The Court has authority to grant declaratory, injunctive, and other relief pursuant 28 U.S.C. §§ 2201-2202 and 5 U.S.C. §§ 702, 705, and 706.

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(e)(1). Defendants include a United States officer sued in his official capacity. Plaintiff the State of New York is a resident of this judicial district and a substantial part of the events or omissions giving rise to this Complaint occurred within this district.

## PARTIES

### A. Plaintiff

5. Plaintiff the State of New York, represented by and through its Attorney General Letitia James, is a sovereign State of the United States of America. As the State's chief legal officer, the Attorney General is authorized to act on behalf of the State in this matter.

### B. Defendants

6. Defendant HUD is an agency and executive department of the United States government and has responsibility for implementing the federal grant program at issue in this action.

7. Defendant Eric Scott Turner (HUD Secretary) is the United States Secretary of Housing and Urban Development and the federal official in charge of the HC program. He is sued in his official capacity.

## ALLEGATIONS

### A. Congress Awards Housing Counseling Program Funds as Required by Statute

8. At issue in this action is HUD's HC program, which provides approximately $57.5 million per year in critical funding to state housing finance agencies and non-profit housing counseling agencies.

9. The HC program was enacted as part of the Housing and Urban Development Act of 1968, Pub. Law 90-448, 82 Stat. 476 § 106.

10. Congress enacted the statute at issue in this action, 12 U.S.C. § 1701x, to provide funding for homeownership and rental counseling to assist tenants and homeowners in improving their housing conditions and meeting their responsibilities. This counseling relates to property maintenance, financial management and literacy, and other matters.

11. This statute places mandatory duties on HUD and the HUD Secretary with respect to this funding.

12. The HUD "Secretary *shall* make financial assistance available under this paragraph to HUD-approved housing counseling agencies and State housing finance agencies." 12 U.S.C. § 1701x(a)(4)(A) (emphasis added).

13. The HUD "Secretary *shall* establish standards and guidelines for eligibility of organizations (including governmental and nonprofit organizations) to receive assistance. . . ." *Id.* § 1701x(a)(4)(B) (emphasis added).

14. The HUD Secretary "*shall*," "[i]n making assistance available . . . consider appropriate ways of streamlining and improving the processes for grant application, review, approval, and award." *Id.* § 1701x(a)(4)(E).

15. Congress has consistently appropriated funds for the HC program in annual appropriations acts. Congress appropriates the funds with a two-year period of availability to

obligate the funds, as opposed to most appropriations that are available just for the fiscal year in which they appropriated. Funds for the HC program thus remain available to award to recipients through the end of the next fiscal year after which the funds were appropriated.

16. On March 15, 2025, Congress enacted a continuing resolution that re-appropriated all of the funds that were appropriated to HUD in the 2024 Appropriations Act, $57.5 million, on the same terms and conditions as in the 2024 Appropriations Act. *See* Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. 119-4 §§ 1101(a)(12), 1101(b)–1108, 139 Stat. 9, 10-12 (2025) (2025 Continuing Resolution).

17. Under the 2025 Continuing Resolution, each appropriation carries the same period of availability as it had in the 2024 Appropriations Act. *Id*. § 1103. The $57.5 million appropriated in the 2025 Continuing Resolution for the HC program therefore carries a two-year period of availability, with these funds expiring on September 30, 2026.

18. The President's proposed Fiscal Year 2026 budget "d[id] not provide funding for the Housing Counseling program."

19. On February 3, 2026, the Consolidated Appropriations Act of 2026 was signed into law, and it included an appropriations act for HUD-administered programs, among other appropriations. *See* Pub. L. 119–75, Div. D, title II (Transportation, Housing and Urban Development, and Related Agencies Appropriations Act, 2026 (THUD)).

20. In the Consolidated Appropriations Act of 2026, Congress provided: "None of the funds made available in this or any other appropriations Act may be used to increase, eliminate, or reduce funding for a program, project, or activity as proposed in the President's budget request for a fiscal year until such proposed change is subsequently enacted in an appropriation Act, or unless such change is made pursuant to the reprogramming or transfer provisions of this or any other

appropriations Act." Pub. L. 119–75, Div. E, title VII, § 739, 140 Stat. 173, 502 (2026) (2026 Appropriations Act).

### B. New York State Regularly Receives HC Program Funds and Recently Applied for the Latest Round of Funding.

21. The HFA is a "corporate governmental agency constituting a public benefit corporation," N.Y. Priv. Hous. Fin. § 439(1), created to preserve high-quality affordable multifamily rental housing that serves communities across the State of New York.

22. Upon information and belief, New York has, through HFA, applied for, and received, HC program funds on a regular basis since 2013.

23. Specifically, New York has historically received between approximately $500,000 and $1 million per year in HC program funds.

24. New York uses HC program funding to support approximately twenty-two HUD-certified housing counseling organizations across the State, providing funding of approximately $20,000 to $100,000 per organization.

25. In March 2026, HUD published a Notice of Funding Opportunity (NOFO) for the HC program. The NOFO stated that the anticipated award date was August 3, 2026, and the estimated performance period end date was March 31, 2027. The NOFO stated that HUD intended to make approximately 175 awards from the funds available under the NOFO.

26. On May 22, 2026, New York submitted an application in response to the NOFO with an anticipated award of approximately $1 million.

27. HUD confirmed New York's application was complete. New York has not otherwise received any response to its application.

### C. President Trump Announces "Pocket Recission" of HC Program Funds

28. On September 25, 2026, President Trump announced he was taking "historic action to eliminate wasteful and harmful spending" by "utilizing a pocket rescission" for "nearly $1 billion" of federal spending. *President Trump Takes Historic Action to Eliminate Wasteful and Harmful Spending*, The White House (Sept. 25, 2026), available at https://www.whitehouse.gov/briefings-statements/2026/09/president-trump-takes-historic-action-to-eliminate-wasteful-and-harmful-spending/.

29. With respect to the HC program, the announcement claimed that "tax dollars [are] being wasted on" "HUD counseling support for NGOs that peddle DEI and discriminate based on race." It asserts that "[t]his HUD programs funds NGOs that ostensibly provide housing counseling, but the program has not shown reduced delinquencies for counseled homebuyers and instead focuses on grantees with DEI-centric discriminatory agendas." *Id.* It lists three purported examples of organizations it describes as "radical groups" and or "far-left NGO[s]," and states that these groups, among other things, "support[] sanctuary city policies," "advocate[] for healthcare for illegal immigrants," "believe[] housing is a human right," and are "committed to advancing equitable community development and affirmatively furthering racial justice." *Id.*

30. As of the filing of this complaint on September 30, 2026, HUD had not yet taken any action to obligate or award at least $56.1 million of the $57.5 million in funds available for HC program funds pursuant to the March 2026 NOFO, including with respect to New York's application for those funds. HUD's decision not to obligate or award funds puts the Congressional appropriation for FY 2026 at risk of expiring at the end of the fiscal year at midnight tonight; HUD is thereby attempting to unilaterally shut down the HC program in its entirety. Collectively, these final agency actions are "HUD's Decisions."

31. HUD's Decisions will cause injury to New York.

32. Specifically, absent relief from this Court, New York will lose the opportunity to compete for the HC program funds to be awarded via the March 2026 NOFO. New York has a demonstrated history of applying for and receiving HC program funds. Not only was New York ready and able to apply for HC program funds, but New York in fact *did* apply for these funds with an application similar to those that were previously funded. New York thus faces harm from HUD's Decisions.

33. New York has used HC program funds to provide critical services to New Yorkers. For example, sub-grantees under New York's FY 2024 award used the funds to provide one-on-one counseling services to over 7,000 households; provide financial assistance to improve living conditions to almost 2,800 households; prevent more than 250 evictions; help almost 300 first time homebuyers close on their first home; and prevent almost 300 foreclosures.

34. HUD's Decisions also harm New York by disrupting its longstanding relationships with organizations that provide households, communities, and partner organizations with housing counseling programs. As of the filing of this complaint, New York has not identified an alternative source of funding to make awards to HC program sub-grantees, and the programs described *supra* will suffer as a direct result.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violation of the Administrative Procedure Act
### Agency Action Contrary to Law and in Excess of Authority, 5 U.S.C. § 706(2)(A), (C)

35. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs.

36. The APA requires that a court set aside agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

37. The APA also requires that a court set aside final agency action that is "not in accordance with the law." 5 U.S.C. § 706(2)(A).

38. HUD's Decisions at issue in this case—(a) to not obligate, by the deadline set by Congress, the full amount of funds that Congress appropriated for the HC program in the 2025 Continuing Resolution and in the Consolidated Appropriations Act of 2026 (specifically HUD's failure to obligate at least $56.1 million of the $57.5 million); (b) to eliminate the HC program and not to provide financial assistance to New York, a HUD-approved State housing finance agency; and (c) to not make awards to entities including New York that applied for funding on the March 2026 NOFO—are each final agency actions reviewable under 5 U.S.C. §§ 702 and 706.

39. HUD's Decisions violate the 2025 Continuing Resolution and the Consolidated Appropriations Act of 2026 because Congress mandated that HUD obligate the full amounts Congress appropriated for the HC program. It is a central tenet of appropriations law that, absent an express indication from Congress to the contrary, an appropriation mandates that an agency obligate the full amount appropriated before the funds expire.

40. Congress did not provide HUD discretion to spend less than the full amounts it appropriated for the HC program. To the contrary, in the 2025 Continuing Resolution and again in the Consolidated Appropriations Act of 2026, Congress required that the funds "shall be used for providing counseling and advice to tenants and homeowners, both current and prospective, with respect to property maintenance, financial management or literacy, and such other matters as may be appropriate to assist them in improving their housing conditions, meeting their financial needs, and fulfilling the responsibilities of tenancy or homeownership; for program administration; and for housing counselor training." 2024 Appropriations Act, 138 Stat. 367, reauthorized by 2025 Continuing Resolution, 139 Stat. 10-12; 2026 Appropriations Act, 140 Stat. 404.

41. HUD must comply with Congress's mandates that HUD obligate the full appropriation unless Congress actually rescinds the funds in a bill that the President signs. Congress has not rescinded any of the $57.5 million appropriated for the HC program under the 2025 Continuing Resolution or the Consolidated Appropriations Act of 2026.

42. HUD's Decisions to eliminate the HC program and not to provide financial assistance to HUD-approved State housing finance agencies, including Plaintiff, or housing counseling agencies violate Congress's mandates that HUD establish and maintain the HC program and that the HUD Secretary "shall make financial assistance available under this paragraph to HUD-approved housing counseling agencies and State housing finance agencies." 12 U.S.C. § 1701x(a)(4)(A).

43. Contrary to Congress's clear directives, HUD has largely shut down this statutorily-required program. Defendants thus have made a final decision and taken final agency action to not maintain the HC program. At a minimum, Defendants have made a final decision and taken final agency action to not maintain the HC program for an extended period of time.

44. HUD's Decisions to shut down the HC program and to eliminate virtually all funding for the HC program—as proposed in the President's budget—also violates Section 739 of the Consolidated Appropriations Act of 2026, which specifically prohibits Defendants from using any funds to "eliminate[] or reduce funding for a program, project, or activity as proposed in the President's budget request for a fiscal year until such proposed change is subsequently enacted in an appropriation Act." Consolidated Appropriations Act of 2026, title VII, § 739, 140 Stat. 502.

45. It is beyond cavil that "agencies are creatures of statute" and "possess only the authority that Congress has provided." *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab.*, 595 U.S. 109, 117 (2022). HUD lacks authority to act contrary to Congress's clear directives.

46. Defendants' conduct therefore is "not in accordance with law" and "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," and Plaintiff is entitled to relief under 5 U.S.C. § 706(2).

47. HUD's Decision will cause harm to New York.

48. HUD's Decisions therefore must be set aside under the APA.

**SECOND CAUSE OF ACTION**

**Violation of the Administrative Procedure Act**
**Arbitrary and Capricious Agency Action, 5 U.S.C. § 706(2)(A)**

49. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs.

50. Under the APA, a court must set aside final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A); *see Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 52 (1983) (agency action must be supported by a "rational connection between the facts found and the choice made") (internal quotation marks omitted); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (agency must provide "reasoned explanation" for departing from prior policy and must provide "a more detailed justification than what would suffice for a new policy" when "its prior policy has engendered serious reliance interests that must be taken into account"); *accord FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 567-68 (2025).

51. When changing positions, an agency must consider both the "alternatives that are within the ambit of the existing policy" and the "serious reliance interests" engendered by the status quo. *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (brackets and internal quotation marks omitted). The agency must not "entirely fail[] to consider an important aspect of

the problem" or "rel[y] on factors which Congress has not intended it to consider." *State Farm*, 463 U.S. at 43.

52. Defendants failed to comply with the bedrock principles of the APA in several respects.

53. First, Defendants provided no satisfactory explanation for their decisions. Defendants' disfavor for the perceived "agendas" of a handful of HC program grantees, in their work outside the HC program, is not a reasoned basis for eliminating the HC program or for failing to obligate funding for the HC program. Furthermore, upon information and belief, each recipient of HC program funding was fully vetted and approved by HUD.

54. Second, Defendants relied upon factors Congress did not permit them to consider. Congress did not permit Defendants to consider the "agendas" of grantees or to decide, based on such agenda, whether to operate and fund the HC program.

55. Third, Defendants failed to consider important factors, including the serious reliance interests of those impacted by their actions, including the State of New York and New York residents served through the HC program. Before an agency adopts a new policy, it must "assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns." *Regents*, 591 U.S. at 33. Defendants failed adequately to consider the consequences of leaving grant recipients without timely access to the federal funds that Congress appropriated for the HC program, and without the benefits of the HC program as a whole.

56. Defendants also failed to consider whether HUD has legal authority to withhold funds appropriated by Congress for a federal program.

57. Defendants' failure to timely obligate and to make available the HC program funds was arbitrary, capricious, and contrary to 5 U.S.C. § 706(2)(A).

58. Defendants' arbitrary and capricious decisions will cause harm to New York, and should be set aside.

**THIRD CAUSE OF ACTION**

**Violation of the Administrative Procedure Act**
**Agency Action Unlawfully Withheld or Unreasonably Delayed, 5 U.S.C. § 706(1)**

59. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs.

60. Under 5 U.S.C. § 706(1), a reviewing court shall compel agency action unlawfully withheld or unreasonably delayed.

61. The 2025 Continuing Resolution and the Consolidated Appropriations Act of 2026 mandate that HUD obligate the full amount appropriated for the HC program before the funds expire, permitting no discretion to spend less than the full amounts. The statute establishing the HC program, 12 U.S.C. § 1701x, mandates that HUD operate the HC program and provide financial assistance to HUD-approved State housing finance agencies and housing counseling agencies. These are discrete actions that HUD must take, and HUD has non-discretionary duties to comply with these commands.

62. As of the filing of this complaint on September 30, 2026, HUD had not yet taken any action to obligate or award at least $56.1 million of the funds available for HC program grants pursuant to the March 2026 NOFO, including pursuant to New York's application for those funds.

63. HUD's failure to take action puts the Congressional appropriation for FY 2026 at risk of expiring at the end of the fiscal year at midnight tonight, and reflects an attempt to unilaterally shut down the HC program in its entirety.

64. Defendants' withholding of these statutorily-required actions is "unlawful." 5 U.S.C. § 706(1).

65. Alternatively, Defendants have "unreasonably delayed" in taking these statutorily-required actions.

## FOURTH CAUSE OF ACTION

### Mandamus - Failure to Obligate Funds and to Maintain the HC Program

66. Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs.

67. If relief is not available on Plaintiff's APA claims, the Court should enter a writ of mandamus.

68. Defendants have disregarded their clear duties to spend appropriations enacted by Congress for the HC program and to maintain the HC program.

69. Mandamus is warranted "to correct transparent violations of a clear duty to act" by federal officials, including specifically where federal officials refuse to spend congressionally appropriated funds for policy reasons. *In re Aiken Cnty.*, 725 F.3d 255, 258 (D.C. Cir. 2013).

70. Mandamus is warranted here if Plaintiff is unable to obtain complete relief on its other claims.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that the Court:

a. Declare that HUD's Decisions are unlawful under the APA because they are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law; and HUD acted in excess of its statutory and regulatory authority;

b. Set aside HUD's Decisions:

a. to not obligate, by the deadline set by Congress, the full amount of funds that Congress appropriated for the HC program in the 2025 Continuing Resolution and in the Consolidated Appropriations Act of 2026 (specifically HUD's failure to obligate at least $56.1 million of the $57.5 million);

b. to eliminate the HC program and not to provide financial assistance to New York; and

c. to not make awards to entities including New York that applied for funding on the March 2026 NOFO;

c. Compel Defendants to obligate the full amount appropriated by Congress for the HC program in the 2025 Continuing Resolution and the 2026 Appropriations, by September 30, 2026, or such other deadline as the Court provides;

d. Compel Defendants to maintain the HC program, as required pursuant to 12 U.S.C. § 1701x;

e. Pursuant to 31 U.S.C. § 1502(b) and the Court's equitable authority, suspend the September 30, 2026 expiration of the unobligated HC program funds and preserve the availability of those funds for obligation pending further order of the Court, including, as necessary, beyond that date; enjoin Defendants from transferring, reprogramming, returning to the U.S. Treasury, or otherwise making unavailable by any means the unobligated funds in a manner that would frustrate effective relief; and require Defendants to take all steps within their respective authority necessary to effectuate that preservation;

f. Retain jurisdiction to monitor Defendants' compliance with this Court's judgment;

g. Award the States their reasonable fees, costs, and expenses, including attorneys' fees, pursuant to 28 U.S.C. § 2412; and

h. Award such additional relief as this Court may deem just and proper.

Submitted September 30, 2026,

**LETITIA JAMES**
ATTORNEY GENERAL OF NEW YORK

*/s/ Stephen C. Thompson*
Stephen C. Thompson
*Special Counsel*
Linda B. Evarts
*Special Counsel*
28 Liberty Street
New York, NY 10005
(212) 416-6183
Stephen.Thompson@ag.ny.gov

*Attorneys for the State of New York*